UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

PATRICIA NSAMWA LUNGU,

        Plaintiff,

    -against-

NEW ISLAND HOSPITAL/ST. JOSEPH HOSPITAL,

        Defendant.

------------------------------------------------------------X

CV-11-0755 (SJF)(GRB)

OPINION & ORDER

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★ JUN 04 2012 ★
LONG ISLAND OFFICE

FEUERSTEIN, J.

On or about February 14, 2011, *pro se* plaintiff Patricia Nsamwa Lungu ("plaintiff")[1] commenced this action against defendant New Island Hospital/St. Joseph Hospital ("the Hospital") alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. Pending before the Court are: (1) the Hospital's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim for relief; (2) plaintiff's "Motion to compel De Novo review" of an order of the Honorable E. Thomas Boyle, United States Magistrate Judge, dated August 2, 2011, denying her application to reconsider and vacate a prior order, dated June 23, 2011, granting the Hospital's motion to stay discovery; and (3) a motion by Kennedy Mulenga ("Mulenga"), who is purported to have been plaintiff's fiancé at the time of her death, to substitute himself and plaintiff's two (2) natural sons, Mitchum Fitchrot Vanrooyen ("Vanrooyen") and Chikulupiliro Musonda Kunda ("Kunda"), for plaintiff pursuant to Rule

---

[1] Plaintiff subsequently died on December 27, 2011.

1

25(a)(1) of the Federal Rules of Civil Procedure. For the reasons stated herein, Mulenga's motion for substitution is denied, the time within which a proper party may move for substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure is extended until July 5, 2012 and all other pending motions are denied without prejudice to renewal in the event that a proper party is substituted for the deceased plaintiff pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure.

I. Background

    A. Factual Background[2]

At all relevant times, plaintiff was a registered nurse contracted by Onward Health Care Inc. ("Onward"), a staffing firm, to work as a "telemetry traveller [sic] nurse" at the Hospital from October 19, 2009 until January 23, 2010. (Addendum to Complaint ["Compl. Add."], ¶¶ 1, 4, 8). According to plaintiff, although she was hired to work in the telemetry unit, the Hospital also assigned her to other units, such as the "step down" unit and the critical care unit ("CCU"). (Compl., Add., ¶ 8(e)).

Plaintiff alleges that prior to working at the Hospital, she had been employed at Forest Hills Hospital within the North Shore-Long Island Jewish System ("LIJ"), at which Peggy Minick ("Minick") had been employed as the nurse executive director. (Compl. Add., ¶¶ 12, 14). According to plaintiff, she had frequent interaction with Minick while employed at LIJ and Minick knew that she had filed a discrimination complaint related to her employment at LIJ with

---

[2] The factual allegations are taken from the complaint and do not constitute findings of fact by this court.

2

the Equal Employment Opportunity Commission ("EEOC"). (Compl. Add., ¶ 14).[3]

Plaintiff alleges that on "[o]ne December morning after [her] night shift" at the Hospital, she encountered Minick, who was employed as the vice president of nursing at the Hospital, for the first time. (Compl. Add., ¶¶ 12-13). According to plaintiff, Minick appeared surprised to see plaintiff at the Hospital and asked her if she had ever worked at LIJ. (Id.) Plaintiff alleges that she responded: "yes I was but I am here [at the Hospital] now as a traveller [sic] nurse." (Id.)

Plaintiff alleges that during her next shift following her encounter with Minick, Mary Dunlop ("Dunlop"), the director of nursing for the telemetry, CCU and step down units, indicated that she did not know that plaintiff had ever worked at LIJ, to which plaintiff responded that her previous employment had been included on her resume. (Compl. Add., ¶ 15). According to plaintiff, Dunlop "gave [her] that look like something was amiss or inappropriate and then she said 'I didn't know that' as she walked away." (Id.) Plaintiff alleges that Dunlop's "deportment was so aberrant of how she normally conducted herself towards [plaintiff]." (Id.) According to plaintiff, from that point on, Dunlop's demeanor towards her changed; she "was subjected to unreasonable and increased work scrutiny * * *," (Compl. Add., ¶ 16); "[her] charge nurse suddenly started going through all [her] patient charts intrusively," (Compl. Add., ¶ 17); and

---

[3] The Court takes judicial notice of the fact that on April 7, 2010, plaintiff commenced an action against LIJ and M. Dowling, the alleged CEO and President of LIJ, pursuant to Title VII and the Americans with Disabilities Act, 42 U.S.C. §§ 12112, *et seq.*, alleging that she was discriminated against based upon her national origin (Zambian) and disability during her employment at LIJ from June 6, 2005 until January 14, 2009. That action was assigned docket number 10-cv-1556 and is pending before the Honorable Joseph F. Bianco, United States District Judge, to whom this case was previously assigned until his recusal herefrom by order entered May 12, 2011. The Court also takes judicial notice of the facts: (1) that Minick is not named anywhere in the body of the LIJ complaint; and (2) that plaintiff alleges in the LIJ complaint that she filed a complaint with the EEOC in June 2008, (LIJ Compl., ¶ 10; LIJ Compl. Add., ¶ 70).

3

Dunlop "started calling [her] at home for issues that were occasioned and should have been resolved by day staff," (id.).

Plaintiff alleges that on her way to, and during, her shift on Christmas Day in 2009, she experienced abdominal pains, which escalated in intensity. (Compl. Add., ¶¶ 18-20). According to plaintiff, Wilmer Rocco ("Rocco"), the nurse supervisor, told her to "just go to the bathroom, open [her] bowels" and she would be fine. (Compl. Add., ¶ 21). Plaintiff alleges that she "politely told [Rocco] that [she] ha[d] tried all that, but it's not helping," and that the Pepcid that she had taken earlier that evening had also not helped, to which Rocco responded that he was "very angry with [her] for doing this to him." (Compl. Add., ¶ 22). According to plaintiff, shortly thereafter, Rocco told her to go to the emergency room, but "[h]e was stormy-looking like it was [her] fault that [she] was not feeling well." (Id.) Plaintiff alleges that Rocco told her that "what [she] was doing was a lot of nonsense" and demanded to know why she had even come in to work if she "was claiming to be sick." (Id.) When plaintiff tried to explain to Rocco that her symptoms had only started in the car on her way to work, he "didn't believe [her] or even care." (Id.)

Plaintiff alleges that she then called her children and asked them to send a taxi to take her to the emergency room at Good Samaritan Hospital because "[her] doctors go there" and it was "near [her] home for [her] kids to * * * visit [her]." (Compl. Add., ¶¶ 23, 25). According to plaintiff, as she was walking to the taxi, Rocco started "screaming in fury at [her]" and asking her where she was going. (Compl. Add., ¶ 24). Plaintiff alleges that Rocco's "lividity was so apparent, for a moment [she] thought he was going to strike [her]," (Compl. Add., ¶ 25); and that Rocco forbade her to go to any emergency room outside the Hospital's, (Compl. Add., ¶ 26).

4

According to plaintiff, she explained to Rocco that she had previously had a "horrifying experience" while being treated in the Hospital's emergency room and did not want to go through that experience again. (Id.) Plaintiff alleges that Rocco "went ballistic on [her]" and threatened that if she left, she would be fired and he would have "[her] license black listed by telling the Nursing Board that [she] abandoned [her] patients." (Compl. Add., ¶¶ 27, 34). According to plaintiff, she was "completely shocked" by Rocco's "lack of compassion" and that "it was clear" to her that Rocco "did not care what happened to [her]. To him [she] was a nurse to deliver service regardless of [her] precarious health state. [She] was just a vessel for service. [She] was inconsequential to him." (Compl. Add., ¶ 28). Plaintiff alleges that when Rocco continued to "roar[] with extreme anger" at her insistence on going to a different hospital, she told him that she was going to call Onward, "[her] agency" through which she worked, and tell them what had transpired. (Compl. Add., ¶¶ 29-33). According to plaintiff, she then sat down on the floor because she "was too weak to even stand not only because of the excruciating abdominal pain but at how shockingly cruel Mr. Rocco was to [her]" and called Onward. (Compl. Add., ¶ 35). The "on-call lady" at Onward told plaintiff that a director would look into the matter on Monday, December 28, 2009. (Id.) According to plaintiff, Rocco continued shouting at her as she got into the taxi and left. (Compl. Add., ¶ 36).

Plaintiff alleges that she spent "the whole night" in the emergency room at Good Samaritan Hospital and was discharged just before 5:00 a.m. on December 26, 2009. (Compl. Add., ¶ 37).

Plaintiff alleges that although she provided the Hospital with "all the relevant hospital treatment documents [from Good Samaritan Hospital] on top of the report detailing what

5

transpired on December 25th, 2009, [she] was never availed [of] any reasonable avenues of complaint process." (Compl. Add., ¶ 39).

Plaintiff alleges that on December 27, 2009, Dunlop called and told her that her employment at the Hospital was being terminated. (Compl. Add., ¶¶ 5, 40). According to plaintiff, "[i]t can there for [sic] be concluded that Management at [the Hospital] endorsed and upheld Mr. Rocco's threats and have jointly and collectively, true to their word, destroyed * * * [her] nursing career * * *." (Compl. Add., ¶40). Plaintiff further alleges that her termination "was undertaken with malice against [her] federally protected rights as provided under Title VII * * *." (Compl. Add., ¶ 42). However, plaintiff does not indicate upon what basis defendant allegedly discriminated against her. (Compl., ¶ 7).

Plaintiff further alleges that when she requested a letter of termination from the Hospital, she was told by an unidentified individual(s) "to find an attorney in order to procure a letter of termination." (Compl. Add., ¶ 6). Plaintiff alleges that since she could not afford to hire an attorney, she "ha[s] not been availed [of] a written record of termination." (Id.)

B. Procedural History

Plaintiff alleges that she filed an EEOC complaint on January 21, 2010, (Compl., ¶¶ 8, 10), and received a right to sue letter on November 25, 2010, (Compl., ¶ 12). The right to sue letter, mailed by the EEOC on November 15, 2010, indicates that the EEOC closed its file on plaintiff's complaint due to "Lack of Jurisdictional Employer/Employee Relationship[]." (Compl., Ex.)

On or about February 14, 2011, plaintiff commenced this action against the Hospital

6

alleging employment discrimination and retaliation in violation of Title VII and seeking compensatory and punitive damages in the amount of seventy-three million six hundred sixty thousand dollars ($73,660,000.00), plus prejudgment interest and costs. Plaintiff does not allege, however, upon what basis she was allegedly discriminated.[4]

On or about June 7, 2011, the Hospital served plaintiff by overnight mail with a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim for relief. Upon plaintiff's failure to timely serve any opposition to the motion, the Hospital filed its motion to dismiss as unopposed. Subsequent to the Hospital's filing of its motion to dismiss as unopposed, the Court received the following documents from plaintiff: (1) a letter designated as "Opposition to defendant's letter to move 'Motion to Dismiss,'" (Doc. No. 25); (2) "Plaintiff's Opposition Motion to Dismiss," (Doc. No. 27); (3) "Plaintiff's Reply to Defendants' [sic] alleged 'second untimely' Submission," (Doc. No. 33); and (4) "Supplemental information in support of timely filing of Opposition to Dismiss Papers," (Doc. No. 35). Plaintiff did not provide any explanation for her delay in opposing the motion, or for her continuous filing of supplemental papers in contravention of this Court's rules.

By order dated June 23, 2011, Magistrate Judge Boyle granted a motion by the Hospital seeking to stay discovery in this action pending a decision on its motion to dismiss as unopposed, finding, *inter alia*, that the Hospital had raised "a substantial legal issue which may obviate the necessity for discovery in this action." Thereafter, plaintiff moved to vacate the June 23, 2011 order and, for the first time, opposed the Hospital's motion to stay discovery. By order dated

---

[4] Clearly, plaintiff was aware of the need to indicate the basis of her discrimination complaint, as she did so in the LIJ complaint.

August 2, 2011, Magistrate Judge Boyle denied plaintiff's application to reconsider or vacate his June 23, 2011 order on the grounds: (1) that plaintiff had defaulted on the motion without adequate explanation; and (2) that plaintiff asserted "no plausible prejudice as a result of the stay of discovery pending a decision on the motion to dismiss." (Doc. No. 31). On August 9, 2011, plaintiff filed a motion seeking to compel *de novo* review of Magistrate Judge Boyle's August 2, 2011 order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure on the grounds: (1) that the Hospital never contacted her to set up a briefing schedule on the motion, in violation of Magistrate Judge Boyle's individual rules; (2) that Magistrate Judge Boyle violated her due process rights "[b]y granting [a] stay of discovery before [she] responded to the motion," (Plaintiff's Motion to Compel [Compel Mot.], at 5); (3) that she would be prejudiced by a stay of discovery; (4) that the Hospital's "bald unsubstantiated assertions do not justify entry of a protective order" and the Federal Rules of Civil Procedure do not provide for an automatic stay of discovery upon the filing of a motion to dismiss pursuant to Rule 12(b); and (5) that her claims in this action are facially plausible.

On February 6, 2012, a statement noting that plaintiff had died on December 27, 2011 was filed with the Court. (Doc. No. 38). On March 13, 2012, Mulenga moved pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure to substitute himself and plaintiff's sons for plaintiff pursuant to a purported holographic will, dated July 20, 2011 indicating, *inter alia*: (a) that plaintiff had two (2) sons, Vanrooyen and Kunda, one (1) grandson and a fiancé who lived in Canada, identified as Mulenga; (b) that plaintiff had no siblings or parents, having been kidnapped as a baby by a woman called Theresa Sakala-Lungu ("Theresa"); (c) that plaintiff did not want Theresa or her husband, Stephen Paul Lungu, near her children or funeral because they

were "imposters;" (d) that plaintiff had this lawsuit, and two (2) other lawsuits, pending in this Court that she wanted continued by Mulenga, Vanrooyen and Kunda upon her death; (e) that any lawyer handling the lawsuits will be the administrator of plaintiff's estate and that any money recovered from the lawsuits will be distributed among Vanrooyen and [illegible]. According to Mulenga, since plaintiff was unemployed and homeless at the time of her death, there is "no need for an administration of [plaintiff's] estate because this pending action * * * and other associated lawsuits are the only assets [her] estate possesses." (Mulenga's Motion to Substitute [Substitute Mot.], at 2). The Hospital opposes Mulenga's motion on the grounds: (1) that the holographic will is not valid under New York law because, *inter alia*, (a) it is missing one (1) or more pages, including a signature line and plaintiff's signature, and (b) it does not satisfy the criteria set forth in New York Estates, Powers and Trusts Law Section 3-2.2(b); (2) that neither Mulenga, Vanrooyen nor Kunda are proper parties for substitution, since (a) they are not representatives of plaintiff, i.e., they have not been lawfully designated by a state authority to represent plaintiff's estate, (b) Mulenga is also not a successor of plaintiff and (c) neither the purported holographic will nor Mulenga's motion indicates (i) whether there are additional siblings or (ii) whether either Vanrooyen or Kunda are willing to proceed with the litigation if lawfully designated as a distributee ; and (3) that the purported holographic will is contradicted by plaintiff's obituary which, *inter alia*, (a) identifies three (3) siblings of plaintiff, including one (1) who resides in the Boston suburb where plaintiff was hospitalized, and plaintiff's parents as surviving her, and (b) fails to mention Mulenga at all. Mulenga has not responded to the Hospital's opposition.

II.  Discussion

Rule 25(a)(1) of the Federal Rules of Civil Procedure provides:

> "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or *by the decedent's successor or representative*. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."

(emphasis added). See Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 469-70 (2d Cir. 1998). Thus, in considering a motion to substitute a party pursuant to Rule 25(a)(1), the Court must decide whether: (1) the motion was timely; (2) the claims survive the decedent's death; and (3) the party sought to be substituted for the decedent is a "proper party." See Allen ex rel. Allen v. Devine, Nos. 09-cv-668, 10-cv-1319, 2011 WL 5117619, at * 2 (E.D.N.Y. Oct. 25, 2011). For purposes of this motion, the first two (2) factors, i.e., the timeliness of the motion and the survival of plaintiff's claims, are not in dispute. See N.Y. E.P.T.L. § 11-3.2(b) ("No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent * * *.") The Hospital opposes the substitution of Mulenga, Vanrooyen and Kunda, however, on the basis that they are not proper parties for substitution.

"A 'proper party' for substitution under Rule 25(a)(1) is either (1) a successor of the deceased party– a distributee of an estate *if the estate of the deceased has been distributed at the time the motion for substitution has been made*, or (2) a representative of the deceased party– a person lawfully designated by state authority to represent the deceased's estate." Allen ex rel. Allen, 2011 WL 5117619, at * 4 (emphasis added); see also Perlow v. Commissioner of Social Security, No. 10-cv-1661, 2010 WL 4699871, at * 2 (E.D.N.Y. Nov. 10, 2010); Garcia v. City of

10

New York, No. CV 08-2152, 2009 WL 261365, at * 1 (E.D.N.Y. Feb. 4, 2009); Shapiro v. United States, No. 07 Civ. 161, 2008 WL 4302614, at * 1 (S.D.N.Y. Sept. 17, 2008); Graham v. Henderson, 224 F.R.D. 59, 64 (N.D.N.Y. 2004); Roe v. City of New York, No. 00 Civ. 9062, 2003 WL 22715832, at * 2 (S.D.N.Y. Nov. 19, 2003). "Whether a person is a proper 'successor or representative' of the decedent is determined by New York law." Garcia, 2009 WL 261365, at * 1; see also Graham, 224 F.R.D. at 64 ("The law of the forum state determines the capacity of the parties to sue and be sued * * *.")

### A. *Pro Se* Representation

Initially, Mulenga, acting *pro se*, is without authority to act on behalf of Vanrooyen or Kunda in seeking their substitution under Rule 25(a)(1). See 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel * * *."); Faccio v. U.S. Department of Housing and Urban Development, 442 Fed. Appx. 599, 600 (2d Cir. Sept. 28, 2011) (holding that a non-attorney *pro se* litigant may not represent anyone but himself); Berrios v. New York City Housing Authority, 564 F.3d 130, 132 (2d Cir. 2009) (holding that Section 1654 "authorizes only two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself. * * * [It] does not permit unlicensed laymen to represent anyone else other than themselves." (quotations and citations omitted)); Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him."); Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997) ("[A]ppearance pro se denotes * * *

11

appearance for one's self; so that a person ordinarily may not appear pro se in the cause of another person or entity.")[5] Moreover, there is no indication, other than Mulenga's own assertion, that Vanrooyen and Kunda in any way authorized Mulenga to seek to act on their behalf. See, e.g. Faccio, 442 Fed. Appx. at 600. Accordingly, the branch of Mulenga's motion seeking to substitute Vanrooyen and Kunda for plaintiff pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure is denied without prejudice to those individuals seeking substitution either *pro se* or through counsel **on or before July 5, 2012.**

B.  Holographic Will

New York law, which is applicable in this case, recognizes holographic wills, i.e., wills "written entirely in the handwriting of the testator, and [which are] not executed and attested in accordance with the formalities prescribed by [Section] 3-2.1 [of the New York Estates, Powers and Trusts Law]," N.Y. E.P.T.L. § 3-2.2(a)(2), "only if made by: (1) A member of the armed forces of the United States while in actual military or naval service during a war * * *, or other armed conflict in which members of the armed forces are engaged[;] (2) A person who serves with or accompanies an armed force engaged in actual military or naval service during such war or other armed conflict[;] [or] (3) A mariner while at sea." N.Y. E.P.T.L. § 3-2.2(b); see also Will of Shindell, 60 A.D.2d 393, 394, 400 N.Y.S.2d 67 (1st Dept. 1977), aff'd, 55 N.Y.2d 655,

---

[5] Nor would Mulenga be permitted to represent plaintiff's estate *pro se* upon substitution since the estate clearly has beneficiaries other than Mulenga (assuming Mulenga is a beneficiary of plaintiff's estate at all). See, e.g. Pridgen, 113 F.3d at 393 (holding that an administrator or executor of an estate may not proceed *pro se* when the estate has other beneficiaries or creditors). Thus, if substituted, Mulenga would need to obtain counsel in order to represent the interests of plaintiff's estate. See, e.g. Shapiro, 2008 WL 4302614, at * 2. The same holds true for Vanrooyen and Kunda in the event they seek substitution.

12

446 N.Y.S.2d 942, 431 N.E.2d 303 (1981) (holding that with the exception of the three (3) statutory exceptions set forth in N.Y. E.P.T.L. § 3-2.2(b), New York does not recognize holographic wills as valid). Moreover, "the failure to sign at the end or to acknowledge, publish or properly witness the [holographic] will renders it invalid." 1 Harris N.Y. Estates: Probate Admin. & Litigation § 8:71 (6th ed.).

Mulenga submits a purported holographic will of plaintiff, who was not a member of the United States armed forces, a person serving with or accompanying an armed force, or a mariner at sea, which was not signed at the end, acknowledged or properly witnessed. The purported will is, therefore, not a valid testamentary instrument under New York law. See, e.g. In re Murphy's Will, 70 Misc.2d 516, 517, 334 N.Y.S.2d 13 (N.Y. Surr. Ct. 1972) (denying probate of a holographic instrument because the decedent was not a member of the armed forces and the instrument was not witnessed); In re Poppe's Will, 60 Misc.2d 418, 302 N.Y.S.2d 708 (N.Y. Surr. Ct. 1969) (denying probate of a purported holographic will where there was no claim or proof that the decedent was in the military service at the time the proffered instrument was executed and where the document was not properly witnessed by two (2) people). Accordingly, plaintiff is deemed to have died intestate.

C. Successor

Based upon the record, plaintiff was not married at the time that she died. According to Mulenga, plaintiff was survived by two (2) sons, Vanrooyen and Kunda.

New York law defines "distributee" as "a person entitled to take or share in the property of a decedent under the statutes governing descent and distribution." N.Y. E.P.T.L. § 1-2.5; see

13

also N.Y. S.C.P.A. § 103(14). Section 4-1.1 of the New York Estates, Powers and Trusts Law governs descent and distribution of a decedent's estate in New York. Section 4-1.1 provides, in relevant part, that distribution of the property of a decedent not disposed of by will shall be "the whole to the issue, by representation,"[6] where, as here, the decedent is survived by issue and no spouse. N.Y. E.P.T.L. § 4-1.1(a)(3). Thus, under New York law, Vanrooyen and Kunda, who have not themselves moved to be substituted for plaintiff in this action, may be distributees of plaintiff's estate, but Mulenga, who purports to have been plaintiff's fiancé at the time of her death, is clearly not. In any event, absent evidence that the proceeds of plaintiff's estate have been distributed, Mulenga cannot be considered plaintiff's "successor" for purposes of Rule 25(a)(1) of the Federal Rules of Civil Procedure.[7] See, e.g. Allen ex rel. Allen, 2011 WL 5117619, at * 4; Garcia, 2009 WL 261365, at * 1. Accordingly, Mulenga may only be substituted under Rule 25(a)(1) if he is a representative of plaintiff.

D. Representative

New York law defines a "personal representative" as "a person who has received letters to administer the estate of a decedent * * *." N.Y. E.P.T.L. § 1-2.13. See Allen ex rel. Allen, 2011 WL 5117610, at * 4 (holding that under New York law, "a 'representative' is usually the

---

[6] "By representation" means, in relevant part, that "[t]he property so passing [to the issue of a decedent] is divided into as many equal shares as there are (i) surviving issue in the generation nearest to the deceased ancestor which contains one or more surviving issue * * * [and] [e]ach surviving member in such nearest generation is allocated one share." N.Y. E.P.T.L. § 1-2.16.

[7] Likewise, until the proceeds of plaintiff's estates have been distributed, Vanrooyen and Kunda cannot be plaintiff's "successor" under Rule 25(a)(1).

14

appointed administrator or executor of the decedent's estate."); Garcia, 2009 WL 261365, at * 1 ("A 'representative' is defined as a person who has received letters to administer the estate of the decedent, usually the appointed administrator or executor of the decedent's estate."); Shapiro, 2008 WL 4302614, at * 1 ("To qualify as the representative of the decedent's estate under New York law, the individual seeking substitution must have received letters to administer the estate of the decedent."); Graham, 224 F.R.D. at 64 (holding that under New York law, "the representative is usually either the appointed administrator or executor of the decedent's estate.")[8]

New York law provides, in relevant part, that "[l]etters of administration must be granted to the persons who are distributees of an intestate and *who are eligible and qualify*, in the following order: (a) the surviving spouse, (b) the children * * *." N.Y. S.C.P.A. 1001(1) (emphasis added). Pursuant to Section 707 of the New York Surrogate's Court Procedure Act, certain individuals are ineligible to receive letters of administration. In order to obtain letters of administration, a person must "present a petition to the court having jurisdiction praying for a decree granting letters of administration to him or to another person upon the estate of the intestate * * *," which "must allege the citizenship of the petitioner and the decedent * * *, that the decedent * * * left no will, * * * and must state whether or not the intestate * * * left any [property]." N.Y. S.C.P.A. 1002.[9] It is beyond cavil that this Court does not have jurisdiction to

---

[8] Any person to whom letters of administration have been issued is known as an "administrator" under New York law. N.Y. S.C.P.A. § 103(2). Any person to whom letters testamentary have been issued is known as an "executor" under New York law. N.Y. S.C.P.A. § 103(20).

[9] Although New York law also gives, *inter alia*, a qualifying child of a decedent who dies intestate the right to act as a "voluntary administrator" to undertake to settle a "small estate," i.e.,

15

find whether Mulenga, Vanrooyen or Kunda are eligible and qualify for letters of administration under New York law, or to grant letters of administration upon plaintiff's estate.

Mulenga has not submitted any evidence, *inter alia*, that he has ever petitioned for, much less been granted, letters of administration upon plaintiff's estate. In the absence of any proof that Mulenga has been granted letters of administration upon plaintiff's estate, he is not a representative of plaintiff within the meaning of Rule 25(a)(1). See, e.g. Garcia, No. 2009 WL 261365, at * 1 (finding that the decedent's girlfriend, who was also the mother and guardian of his child, was not a representative of the estate in the absence of proof that she had been granted letters of administration regarding the estate).[10] Since Mulenga is neither a successor nor a representative of plaintiff within the meaning of Rule 25(a)(1) of the Federal Rules of Civil Procedure, and has no authority to move for substitution on behalf of either Vanrooyen or Kunda, his motion for substitution is denied in its entirety.

Although more than ninety (90) days have now elapsed since the statement noting

---

constituting personal property having a gross value of thirty thousand dollars ($30,000.00) or less, "without the formality of court administration * * * ," N.Y. S.C.P.A. §§ 1301, 1303(a), such voluntary administrators "have no power to enforce * * * a claim for personal injuries to the decedent," N.Y. S.C.P.A. § 1306(3), including a claim under federal civil rights law. See, e.g. Johnson v. Morgenthau, 160 F.3d 897, 898-99 (2d Cir. 1998) (per curiam); Graham, 224 F.R.D. at 62-63; Estate of Vaiselberg ex rel. Vaiselberg v. Snow, No. 02 Civ. 6235, 2003 WL 1878248, at * 1 (S.D.N.Y. Apr. 14, 2003). In any event, there is no evidence that either Mulenga, Vanrooyen or Kunda ever: (1) sought to act as a voluntary administrator of plaintiff's estate pursuant to Section 1304 of the New York Surrogate's Court Procedure Act, or (2) obtained a certificate of the court evidencing their "qualification and authority to act" as a voluntary administrator of plaintiff's estate pursuant to Section 1304(5) of the New York Surrogate's Court Procedure Act.

[10] Likewise, absent proof that letters of administration have been granted to Vanrooyen or Kunda upon plaintiff's estate, they are also not representatives of plaintiff's estate within the meaning of Rule 25(a)(1).

16

plaintiff's death was filed, Mulenga timely moved for substitution prior to the expiration of the ninety (90)-day period. Accordingly, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, the time within which the Hospital or a successor or representative of plaintiff may move for substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure is extended **until July 5, 2012.** In the event that a motion for substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure is not made by a proper party **on or before July 5, 2012**, this action will be dismissed in its entirety with prejudice.

Since this action cannot proceed absent the substitution of a proper party for the deceased plaintiff, all pending motions are hereby denied without prejudice to renewal in the event that a proper party is substituted pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure.

III. Conclusion

For the reasons stated herein, Mulenga's motion for substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure is denied in its entirety; the time within which a proper party may move for substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure is extended **until July 5, 2012**; the failure of a proper party to move for substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure **on or before July 5, 2012** will result in this action being dismissed in its entirety with prejudice; and all pending motions are denied without prejudice to renewal in the event that a proper party is substituted for the deceased plaintiff pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure. The Clerk of the Court is directed to serve notice of entry of this Order upon: (1) all parties to this action in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure; (2) Kennedy Mulenga, at

the address designated on his motion for substitution: 26 Ainslie Street South, Apt. # 405, Cambridge, Ontario, N1R 3K1, Canada; and (3) Mitchum Vanrooyen, at the address designated on Mulenga's statement noting plaintiff's death: 146-39 Lakewood Avenue, Jamaica, New York 11435. The Court has not been provided with an address at which to serve Kunda with a copy of this Order. Therefore, Mulenga, as the movant, is directed to serve a copy of this Order upon Kunda in accordance with Rule 5 of the Federal Rules of Civil Procedure and to file proof of such service with the Court.

SO ORDERED.

s/ Sandra J. Feuerstein

---

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 4, 2012
      Central Islip, N.Y.